UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL BISCHOFF
and PASSPORT PIZZA,
        Plaintiffs,

                v.

KEN WALDORF, CHRISTOPHER
SWANSON, PIZZA PALAZZO, TRACY DOE,
WALSON, INC., JOHN DOES 1-10,
and JANE DOES 1-10,

        Defendants.
_____/

Civil No. 09-10549
Hon. John Feikens

**OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTION TO DISMISS**

This case involves a very simple resolution of overly complicated pleadings. Although a one-sentence order could dismiss this case for lack of standing, I have included more detail to emphasize the importance of the rule at issue: a corporation's claims, even when purportedly "assigned" to an individual, must be litigated by a licensed attorney. This policy protects the courts and other litigants from incomprehensible and burdensome cases like the present one.

**THE COMPLAINT**

On February 13, 2009, Michael Bischoff commenced this action *pro se* by filing a complaint on behalf of himself "&/or Passport Pizza."[1] In the Complaint, Mr. Bischoff purports to be the owner and creator of Passport Pizza. Passport Pizza has been registered as an assumed name of both

---

[1] Because Mr. Bischoff concedes that Passport Pizza is a d/b/a for a corporation, and, as a non-lawyer, he may not represent any entity, I will refer to the plaintiff(s) simply as "Mr. Bischoff" or "Plaintiff."

Passport Group LTD and Passport Enterprises, Inc.[2] Mr. Bischoff is not listed on the incorporation papers for either entity. In fact, it is unclear from the record whether Mr. Bischoff has any relationship with either company, or their d/b/a, Passport Pizza. Adding to the web of complexity, a third entity, Passport U.S.A., Inc., appears to be the owner of a trade or service mark central to Mr. Bischoff's allegations. Mr. Bischoff is the registered agent of Passport U.S.A., Inc. This entity, however, first filed articles of incorporation on March 17, 2008 – seven months *after* the franchise agreement he now attempts to enforce. There is no indication of any legal relationship between Passport Pizza and Passport U.S.A., Inc.

The Complaint seeks several extraordinary remedies, including $10,000,000 in damages and an order compelling the U.S. Attorney to investigate the alleged criminal actions. It names thirteen individual defendants (Ken Waldorf, Christopher Swanson, Tracy (Doe), and 10 John or Jane Does) and two corporate defendants (Pizza Palazzo and Walson, Inc.). The Complaint alleges that some (unidentified) defendant signed a contract to become a franchisee of Passport Pizza for a one-year period beginning in August, 2007. All defendants deny this allegation. The alleged franchise agreement is not attached to any pleading or otherwise entered into the record.

I will attempt to extract from the ill-drafted Complaint the allegations comprising Mr. Bischoff's claims, all of which allegedly occurred after the franchise agreement expired:

(a) Defendants failed to return a Passport Pizza Operations Manual, which Mr. Bischoff claims cost him over $1,000,000 to develop;

(b) Defendants continued to use the Passport Pizza menu, or at least used "identical" (allegedly trademarked) product names and pricing structure, thus permitting customers to order at the new business using the franchise's menu;

---

[2]Passport Enterprises, Inc. was dissolved in 2006 – before any of the events related to this Complaint occurred.

    (c)    Defendants continued to use the same phone number, which Mr. Bischoff alleges he owns;

    (d)    Defendants now own/operate a business known as Pizza Palazzo; Mr. Bischoff alleges that he registered and owns the internet domain name "pizzapalazzo.com."[3] Thus, he claims the Defendants are "violating" his domain name and engaging in "copyright violations."

    (e)    Defendants told "investigators" who placed calls to order pizza that they used to be Passport Pizza, but dropped the franchise because of "shady stuff."

The Complaint alleges four "causes of action," each comprised of an awkward sub-grouping of around a dozen civil claims. The claims include: violations of the "Lantham [sic] Trademark Act", Uniform Trade Secrets Act, Economic Espionage Act, "state & [sic] common law" copyright and trademark violations "same as if rewritten herein", conversion, fraud and fraud in the inducement, breach of contract, libel and slander, and "violation" of plaintiff's registered internet domain name under "trademark, copyright & state law." Even if Mr. Bischoff or a properly-named corporation had standing, a cursory review demonstrates that many of the claims fail on their face:[4]

- The Complaint identifies no trade secrets with the particularity required to plead a cause of action under the Uniform Trade Secrets Act.
- Although the Economic Espionage Act criminalizes the theft or misappropriation of a trade secret, it does not create a private cause of action.
- Mr. Bischoff does not allege or present evidence of any <u>registered</u> copyrights. Therefore, he cannot sue for copyright infringement under the 1976 Copyright Act.
- Nor is it likely that Mr. Bischoff can state a claim for "state" or "common law" copyright, as such claims have been largely preempted by Section 301 of the 1976 Copyright Act. Moreover, the Complaint has not identified a single copyrighted work or alleged an infringing act (*i.e.* unauthorized reproduction, distribution,

---

[3]The domain "pizzapalazzo.com" was first registered on November 24, 2008. It now directs visitors to a Passport Pizza website. It appears that Mr. Bischoff, in an attempt to harm the defendants' new business, registered the domain name *after* defendants started using it.

[4]Because I am dismissing the Complaint for lack of standing, I do not cite the legal authority for these conclusions. As none of these conclusions are essential to my resolution of the matter, they would be non-precedential *dicta* in any event.

      performance, or public display of a protected work or creation of a derivative work).

- The fraud and fraud in the inducement claims must be pled with particularity. There are insufficient facts alleged to support either claim.

- Mr. Bischoff apparently did not register the internet domain name he now tries to sue upon until *after* the defendants began using it. There is no indication that Mr. Bischoff has any claim to the name Pizza Palazzo, other than his rather obvious attempt to retaliate against the defendants for refusing to renew the alleged franchise agreement and harm their ongoing business operations.

- The only fact in support of the "libel and slander" claim is that someone answering the phone at Pizza Palazzo indicated that the business had dropped the Passport Pizza franchise because of some "shady stuff." As there has been no allegation of a written defamatory publication, the libel claim fails. The slander claim also fails because there are insufficient facts alleged to support a claim of defamation *per se*, and there are no allegations of the existence of special harm caused by the publication (defamation *per quod*).

The Complaint also purports to bring <u>criminal</u> claims for: violations of "criminal Trademark statutes" and "Federal Criminal Laws [for] 'Infringement of Copyright or Trademark' as set forth in [17] U.S.C. § 506(a); 18 U.S.C. §§ 2318-2320, 2511 for 'commercial gain'." Ignoring for a moment that an individual may not bring criminal charges, these allegations further demonstrate Mr. Bischoff's poor understanding of the law and inability to clearly articulate a cause of action. Again, the slightest scrutiny disposes of <u>all</u> of Mr. Bischoff's criminal allegations:

- Because he has claimed no registered copyright, 17 U.S.C. § 506(a) and 18 U.S.C. § 2319 (criminal copyright infringement) do not apply.

- Mr. Bischoff has not (and seemingly cannot) allege facts to support a cause of action under 18 U.S.C. § 2318 (trafficking in <u>counterfeit labels</u> or packaging); 18 U.S.C. § 2319A (unauthorized fixation of and trafficking in sound recordings and music videos of <u>live musical performances</u>); 18 U.S.C. § 2319B (unauthorized recording of <u>motion pictures</u> in a motion picture exhibition facility); 18 U.S.C. § 2320 (trafficking in <u>counterfeit goods</u> or services); or 18 U.S.C. § 2511 (interception and disclosure of wire, oral, or <u>electronic communications</u> prohibited).

Of the remaining civil claims, *perhaps* some entity has a claim for breach of contract (although the contract has not been provided, defendants deny having entered into such a contract,

and the "breach" itself has never been described).  In addition, it appears that a trademark claim may have merit, though it would likely be based on common-law trademark.

It is precisely this type of inarticulate, awkward, and meritless litigation that courts seek to avoid through the rule requiring that corporations be represented by counsel.  Neither courts, nor defendants, should waste time and resources on such proceedings.

**PROCEDURAL HISTORY**

On March 10, 2009, defendants moved to dismiss the Complaint on the grounds that the plaintiffs lacked standing, and that Passport Pizza is not represented by an attorney.[5]  On April 6, 2009, Mr. Bischoff filed a brief in opposition to the motion, essentially reiterating the allegations in his Complaint.[6]  At the April 15, 2009, motion hearing before Magistrate Judge Morgan, Mr. Bischoff first alleged that Passport Pizza had assigned its interests in this case to him.  Thereafter, he filed an "Assignment Instanter" indicating that "Passport USA Inc (DBA Passport Pizza)", as the owner of the trademarks, copyrights and all claims involved in this case, assigned those claims to Michael Bischoff for "valuable consideration."[7]

On July 22, 2009, Magistrate Judge Morgan issued a Report and Recommendation

---

[5] Defendants also moved for summary judgment and for sanctions.  At this point in the proceedings, I decline to award monetary sanctions, and by dismissing the Complaint, the motion for summary judgment is moot.

[6] To this, he attached an undated Exhibit which he claimed supported his position.  Under penalty of perjury, Mr. Bischoff swore: "That everything is true in the complaint and motion for summary judgment."  Obviously, Mr. Bischoff did not intend to attest to the veracity of the Defendants' Motion for Summary Judgment.  This type of inadvertent mistake could prove fatal to many complex litigation claims.  And on a procedural note, the <u>undated</u> "declaration" fails to meet the requirements of 28 U.S.C. § 1746.

[7] Mr. Bischoff again filed an undated Affidavit in Support attesting that "everything is true in the motion."  I imagine Mr. Bischoff intended to attest to the authenticity of the *Assignment*, and not the Defendants' Motion.

recommending that Mr. Bischoff be granted leave until September 1, 2009, to permit an attorney to enter an appearance and file an amended complaint on behalf of a properly named party. She further recommended that if no attorney appearance or amended complaint is filed by that date, the case should be dismissed.[8]

On August 4, 2009, Mr. Bischoff, still acting *pro se*, filed objections to the Report and Recommendation. While it is not entirely clear, it appears he objected only to the conclusion that he has no standing. He reasoned that since "all allegations of the [plaintiff] must be accepted as true," and he claimed to have standing, the court must find that he has the requisite standing. The "allegations" he expects the court to rely upon include: (1) that there has been "a legitimate assignment" before the filing of the lawsuit, granting him "clear title to the trademarks, copyrights, [and] trade secrets at issue"; (2) he is the owner and creator of the various trademarks, copyrights and trade secrets (including the operations manual); and (3) the naming of Passport Pizza as a plaintiff in the Complaint was "merely a misnomer of Passport Group LTD or Passport Enterprises, Inc." doing business under the assumed name Passport Pizza. In his objections, Mr. Bischoff also "rewr[ote] his [response to] motion for Summary Judgment same as if rewritten [t]herein", cited various internet websites for the proposition that "the use of assignments are [sic] very common in the trucking industry, insurance industry, . . . [and] the legal field", and concluded, "One can assume if one can 'assign his rights in the treasure . . . corporation . . .' that said 'corporation' can assign the rights to whomever it pleases."

---

[8]Mr. Bischoff also filed a motion for preliminary injunction along with his Complaint. Magistrate Judge Morgan recommended that this motion be denied, and neither party objected. It goes without saying that Plaintiff's Motion for a Preliminary Injunction is DENIED.

6

**ANALYSIS**

Appearances before a federal court are governed by 28 U.S.C. § 1654, which provides:

> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

Although § 1654 permits an individual to proceed *pro se* in federal court, the statute does not permit an individual to appear on behalf of a corporation. *Doherty v. American Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984); *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1427 (7th Cir. 1985) (A corporation "is an abstraction, and an abstraction may not appear *pro se*."). The Sixth Circuit has held that a corporation must appear by counsel or not at all. *Ginger v. Cohn*, 426 F.2d 1385, 1386 (6th Cir. 1970).

Many reasons exist for this rule. First, the rule ensures that all interests in the corporate party are effectively represented. The various interests of a corporation's managers, workers, investors and creditors may not be aligned with those of a lay person seeking to represent the corporation. *See Scandia Down*, 772 F.2d at 1427. Second, and perhaps more relevant in the case of a closely-held corporation (as Passport Pizza appears to be):

> the conduct of litigation by a nonlawyer creates unusual burdens not only for the party he represents but as well for his adversaries and the court. The lay litigant frequently brings pleadings that are awkwardly drafted, motions that are inarticulately presented, proceedings that are needlessly multiplicative. In addition to lacking the professional skills of a lawyer, the lay litigant lacks many of the attorney's ethical responsibilities, *e.g.*, to avoid litigating unfounded or vexatious claims.

*Jones v. Niagara Frontier Transportation Authority*, 722 F.2d 20, 22 (2d Cir. 1983). *See also Lewis v. Lenc-Smith Mfg. Co.,* 784 F.2d 829, 830 (7th Cir.1986) ("All too frequently non-lawyers, as here,

bring less than considered [claims] and present arguments in an inarticulate, if not totally incomprehensible, manner."); *Simbraw, Inc. v. United States,* 367 F.2d 373, 375 (3d Cir. 1966) ("The confusion that has resulted in this case from pleadings awkwardly drafted and motions inarticulately presented . . . demonstrates the wisdom of such a policy."); *Capital Group, Inc. v. Gaston & Snow*, 768 F. Supp. 264, 265 (E.D. Wisc. 1991) ("This rule further protects the court and the public from irresponsible behavior by lay advocates who lack many of the attorney's ethical and legal responsibilities and who often are incapable of presenting legal arguments in an articulate, concise manner.").

In light of these compelling policy reasons, other jurisdictions have long held that a litigant may not, through a purported assignment of claims, circumvent the rule requiring a corporation to be represented by counsel. *See, e.g., Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381 (11th Cir. 1985) ("We see no reason to permit any evasion of the general rule [of corporate representation] by the simple expedient of the assignment of corporate claims to the *pro se* plaintiff."); *Jones v. Niagara*, 722 F.2d at 23 (stressing that courts disapprove of "any circumvention of the rule [of corporation representation by counsel] by . . . assignment of the corporation's claims to the lay individual."); *In re Thomas,* 387 B.R. 808 (Bankr. D. Colo. 2008) ("courts will look past the legal title to determine whether a *pro se* purported assignee is circumventing the rules . . . requiring that corporations be represented by counsel"); *Jones v. Dacosta,* 930 F. Supp. 223, 224 (D. Md. 1996)("a corporation may not assign its interest in a case to a person . . . in order to permit that latter person as an assignee to represent itself *pro se* in connection with the said claim")*; Capital Group, Inc,* 768 F.Supp. at 265 (same holding); *Roberts v. State Dep't of Revenue*, 162 P.3d 1214, 1220 (Alaska 2007) (declaring an assignment from a business to its owner invalid as an attempt to circumvent the

requirement that business be represented by an attorney); *Shamey v. Hickey*, 433 A.2d 1111 (D.C. 1981) (refusing to "sanction" such an assignment "because it involves not only the circumvention of a court rule, but also the unauthorized practice of law."); *Biggs v. Schwalge*, 93 N.E.2d 87, 88 (Ill. App. Ct. 1950) ("An assignment cannot be used as a subterfuge to enable plaintiff to indulge his overwhelming desire to practice law, without complying with the requirements for admission to the bar.").

In a case procedurally similar to the one at bar, an individual, acting *pro se*, asserted claims in his name and in the name of his corporation. *Mercu-Ray Industries, Inc. v. Bristol-Myers Co.*, 392 F. Supp. 16, 18 (S.D.N.Y. 1974). The defendant moved to dismiss because the corporation was not represented by counsel and the complaint failed to state claims upon which the individual plaintiff could recover. In response, the individual plaintiff "attempted to obviate" the corporation's lack of representation "by assigning all rights in the corporate causes of action to himself and then pressing those claims pro se." *Id*. For purposes of the motion to dismiss, the court assumed the assignment was valid. *Id*. Nevertheless, the court dismissed the complaint, explaining that to allow a purported assignee of a corporation's claims to appear *pro se* "would be allowing him to flout a well-established and purposeful public policy by means of a procedural device. [He] chose to accept the advantages of incorporation and must now bear the burdens of that incorporation." *Id*. at 20.

In this case, as in *Mercu-Ray*, Mr. Bischoff first filed on behalf of himself "&/or" his corporation (Passport Pizza). In response to Defendants' Motion to Dismiss for lack of standing, he attempted to obviate the corporation's lack of standing by assigning the claims to himself so that he may proceed *pro se*. For purposes of this Motion, I will assume the assignment is valid. Notwithstanding the assignment, I agree with *Mercu-Ray* and the numerous cases from other

jurisdictions that would require Passport Pizza's claims to be litigated by a licensed attorney.

As is obvious from the papers filed in this case, Mr. Bischoff has demonstrated "neither any particular legal skills, nor comprehension of pertinent legal concepts." *Jones v. Niagara*, 722 F.2d at 23.  Having examined the policy reasons for the rule that a corporation must appear through counsel, I hold that a non-lawyer may not circumvent this rule through a purported assignment of claims.  For these reasons, Defendants' Motion to Dismiss is GRANTED.

**IT IS SO ORDERED.**

Date:  September 25, 2009                             s/ John Feikens
                                                                           John Feikens
                                                                           United States District Judge

|  Proof of Service |
| --- |
| I hereby certify that the foregoing order was served on the attorneys/parties of record on September 25, 2009, by U.S. first class mail or electronic means.<br><br>                                    s/Carol Cohron<br>                                    Case Manager |